Loren R. GAJEWSKI and Mervin A. Gajewski, Plaintiffs-Appellants,

v.

Lyle D. BRATCHER et al., Defendants-Appellees.

Civ. No. 9175.

Supreme Court of North Dakota.

April 8, 1976.

Rehearing Denied April 22, 1976.

---

874

Loren R. Gajewski and Mervin A. Gajewski, Alexander, pro se.

Bjella & Jestrab, Williston, for defendants and appellees; argued by Frank F. Jestrab.

PAULSON, Judge.

This is an appeal by the plaintiffs, Loren R. Gajewski and Mervin A. Gajewski [hereinafter referred to as the Gajewskis], from an order of the McKenzie County District Court directing the reinstatement of the district court's judgment quieting title to certain land in the defendants, Lyle D. Bratcher and Sharon Bratcher [hereinafter referred to as the Bratchers], after such judgment was reversed and the case was remanded by this Court to the district court of McKenzie County.

The facts in this case are set forth in this Court's opinion in *Gajewski v. Bratcher*, 221 N.W.2d 614 (N.D.1974) but will be set forth as necessary to place the issues presented for our review in this appeal in proper context. In *Gajewski v. Bratcher, supra*, this Court reversed the district court's original judgment (dated August 4, 1972), quieting title to the disputed land in the Bratchers, and remanded the case with directions that the district court vacate and set aside its judgment; and that such court enter judgment quieting title to such land in the Gajewskis, as joint tenants with right of survivorship. However, the district court never entered judgment on remand and thereafter granted the Bratchers' motion, under Rule 60(b), N.D.R.Civ.P., and ordered that its original judgment be reinstated. The district court's decision reinstating the original judgment was based upon its finding that the Gajewskis had accepted substantial benefits under the terms of the district court's judgment while the Gajewskis' appeal was pending in the Supreme Court, and that they were, therefore, precluded from contesting the validity of such judgment. The case is again before us on appeal from an order of the district court which, in effect, quieted title to the disputed land in the Bratchers.

The underlying dispute in the instant case involves title to certain land described as follows:

The Southwest Quarter of Section 12, Township 151 North, Range 102, situated in McKenzie County of this State.

This Court held in *Gajewski v. Bratcher, supra*, that title to such land was properly vested in the Gajewskis by virtue of a quitclaim deed executed and delivered on December 6, 1961. Such quitclaim deed transferred title to such land from Glenna I.

Gajewski, a widow, and Lloyd M. Gajewski, her son, as grantors, to "L. R. Gajewski and Mervin Gajewski", as grantees. This Court also concluded that the warranty deed under which the Bratchers claimed title to the land was champertous and void. *Gajewski v. Bratcher*, Syll. ¶ 9, *supra*.

This Court's opinion in *Gajewski v. Bratcher, supra,* was filed on June 27, 1974. On August 26, 1974, this Court denied the Bratchers' petition for rehearing and on September 10, 1974, issued its mandate, reversing the judgment of the district court and remanding the case to such court.

On April 15, 1975, the Bratchers filed with this Court a motion, pursuant to Rule 60(b), N.D.R.Civ.P., seeking reinstatement of the district court's original judgment quieting title to the land in the Bratchers. As grounds supporting such motion, the Bratchers claimed that the Gajewskis had accepted the benefits of the district court's judgment by the negotiation and cashing of a $5,000 bank money order which had been delivered to the Gajewskis after the district court had entered its judgment; and the Bratchers further contended that such negotiation and cashing of the bank money order was without the knowledge of and in fraud of the rights of the Bratchers.

On April 16, 1975, this Court denied the Bratchers' motion for relief under Rule 60(b), N.D.R.Civ.P., and suggested, by letter dated April 16, 1975, from Luella Dunn, Clerk of the Supreme Court, to counsel for Bratchers that they "seek whatever relief you believe you are entitled to from the district court".[1]

On May 8, 1975, the Bratchers filed a motion in the district court, pursuant to Rule 60(b), N.D.R.Civ.P., requesting that the district court reinstate its original judgment quieting title to the land in the Bratchers. Such motion was based on substantially the same grounds as had been set

forth in the Bratchers' motion which was filed in this Court on April 15, 1975. In their motion the Bratchers again contended that the Gajewskis' action in negotiating and cashing the $5,000 bank money order had been "without the knowledge of and in fraud of the rights of the Defendants Bratcher". The Bratchers' motion was supported by the affidavit of LaVern C. Neff, counsel for the Bratchers, and by the affidavit of Theodore Omlid, assistant vice president of the First International Bank of Watford City, North Dakota.

The district court on May 14, 1975, conducted a hearing on the Bratchers' Rule 60(b), N.D.R.Civ.P., motion. Such hearing was recessed, and was reconvened on May 28, 1975.

On July 1, 1975, the district court issued its order granting the Bratchers' motion for relief under Rule 60(b), N.D.R.Civ.P., setting aside the decision of this Court in *Gajewski v. Bratcher, supra,* and ordered that the district court's original judgment be reinstated.

On July 10, 1975, the Gajewskis filed a motion in the district court, pursuant to Rule 52(b), N.D.R.Civ.P., requesting that such court amend its July 1, 1975, "Findings, Conclusions and Order Granting Defendants Bratcher's Motion for Relief under Rule 60(b), N.D.R.Civ.P. and Reinstating District Court Judgment", and the judgment entered pursuant thereto.

On September 12, 1975, the Gajewskis filed their own motion for relief pursuant to Rule 60(b), N.D.R.Civ.P., contending that the district court's July 1, 1975, order reinstating the original district court judgment should be vacated and set aside on the grounds that the Bratchers had allegedly perpetrated a fraud upon the court and upon the Gajewskis by purchasing another parcel of land from the Glenna I. Gajewski

---

1. The entire text of the letter from Luella Dunn, Clerk of the North Dakota Supreme Court, to LaVern C. Neff, counsel for the Bratchers, is as follows:

"Your Motion for relief under Rule 60(b) N.D.R.Civ.P. has been referred to the members of the Supreme Court this afternoon.

"The Court has denied your Motion and suggests that you seek whatever relief you believe you are entitled to from the district court."

Estate at a "reduced and insufficient price", and by subsequently then attempting to recover an additional $5,000 from the Gajewskis. On September 24, 1975, the district court conducted a hearing on both of the Gajewski motions.

By separate orders, both dated September 25, 1975, the district court denied the Gajewskis' Rule 52(b), N.D.R.Civ.P., motion; and also denied the Gajewskis' motion for relief under Rule 60(b), N.D.R.Civ.P.

On October 20, 1975, the Gajewskis timely served, pursuant to Rule 4(a), of the North Dakota Rules of Appellate Procedure, a notice of appeal from the July 1, 1975, order of the district court; and also from the district court's two orders, both dated September 25, 1975, which orders had denied the Gajewskis' motions filed pursuant to Rules 52(b) and 60(b), N.D.R.Civ.P.

We are presented with the following issues for our consideration in this appeal:

1. Is the district court's order granting the Bratchers' Rule 60(b), N.D.R. Civ.P., motion properly before this Court for review?

2. Did the district court have jurisdiction to hear the Bratchers' Rule 60(b), N.D.R.Civ.P., motion?

3. Did the district court err in granting the Bratchers' Rule 60(b) motion and ordering reinstatement of the district court's original judgment dated August 4, 1972?

4. Did the trial court err in concluding that the Gajewskis committed a fraud upon the Supreme Court and the district court by negotiating and cashing the $5,000 bank money order which they had received after entry of the district court's original judgment in this case?

5. Did the district court err in refusing to grant the Gajewskis' Rule 52(b) and Rule 60(b), N.D.R.Civ.P., motions?

Before considering the issues presented for our review in this appeal, we will first summarize the basic facts. This action was originally commenced by the Gajewskis against the Bratchers to resolve a dispute over title to certain McKenzie County land which had originally been owned by Glenna I. Gajewski and Lloyd M. Gajewski, her son. After trial, the district court held, in its original judgment (dated August 4, 1972) that the quitclaim deed under which the Gajewskis claimed title was delivered as, and intended to be security for, the repayment of a cash loan of $4,000, plus $200 per year for maintenance and taxes, payable on or before December 6, 1966.

On November 26, 1966, Glenna I. Gajewski purchased from the First International Bank of Watford City, North Dakota, a bank money order in the amount of $5,000, payable to "L. R. Gajewski, or Loren Gajewski, or Mervin Gajewski". Such bank money order was thereafter tendered to the Gajewskis by Glenna I. Gajewski as repayment of a loan allegedly advanced by the Gajewskis to her in 1961. The Gajewskis refused tender of such bank money order and thereafter commenced this action to quiet title.

The district court's judgment, dated August 4, 1972, quieted title to the land in the Bratchers, and also:

"ADJUDGED, DETERMINED AND DECREED that there is due and owing to Loren R. Gajewski and Mervin A. Gajewski the sum of Five Thousand ($5,000.00) Dollars evidenced by tender of Bank Money order drawn upon the First International Bank of Watford City, North Dakota for that amount on November 26, 1966. That said sum without interest is owed by Glenna I. Gajewski to Plaintiffs and upon payment of which the obligation owed by Glenna I. Gajewski to Plaintiffs is fully discharged. That pending acceptance thereof by Plaintiffs, the sum of $5,000.00 shall not accrue interest."

Glenna I. Gajewski, however, was not a party to the quiet title action commenced by the Gajewskis in district court. Her only involvement was as the common grantor through whom both parties to the action claimed title to the land. Glenna I. Gajewski died in 1969, after this action was com-

menced, but before the district court rendered judgment in the case at bar. Lloyd M. Gajewski, her son, is the administrator of her estate. Probate of the Glenna I. Gajewski Estate had not yet been completed at the time of the hearing in the instant case. The attorney for the Bratchers in this action, Mr. LaVern C. Neff, is also the attorney for the Glenna I. Gajewski Estate.

On August 28, 1972, before expiration of the time for filing a notice of appeal from the district court's original judgment (dated August 4, 1972), Mr. Neff mailed to the Gajewskis the $5,000 bank money order (which had been purchased in 1966 by Glenna I. Gajewski), together with the following cover letter:

> "August 28, 1972
> "Gen. 4733
>
> "Messrs. Loren and Mervin Gajewski
> "Alexander, North Dakota
>
>> "Re: Loren R. Gajewski and Mervin A. Gajewski Plaintiffs v. Lyle D. Bratcher, Sharon Bratcher and Edward Bratcher, Defendants
>
> "Dear Loren and Mervin:
>
> "In accordance with the Judgment entered in the above civil No. 3316 I enclose and transmit herewith the following Bank Money Order:
>
>> "Bank Money Order drawn on the First International Bank of Watford City, Dated November 25, 1966, Remitter being Mrs. Glenna Gajewski, made payable to the order of L. R. Gajewski or Loren Gajewski or Mervin Gajewski, in the amount of $5,000.00.
>
>> "Very sincerely,
>> "BJELLA & JESTRAB
>> "LaVERN C. NEFF
>
> "LCN/pbh
> "Enclosure"

On September 29, 1972, the Gajewskis served notice of appeal from the district court's judgment dated August 4, 1972, which quieted title to the land in the Bratchers. At that time Mr. Neff made no demand on the Gajewskis for the return of the $5,000 bank money order which he had mailed to them one month earlier.

The Gajewskis, in this appeal, acknowledge receipt of the bank money order and of the letter from Mr. Neff, and also acknowledge that such bank money order was in their possession and under their dominion and control until negotiated and cashed almost two years later, on August 13, 1974. During such two-year period, the Gajewskis prosecuted their appeal in this Court, and by opinion filed on June 27, 1974, by the Supreme Court, the district court's judgment was reversed and title to the land ordered quieted in the Gajewskis. While the Bratchers' petition for rehearing was pending before this Court, the Gajewskis, on August 13, 1974, negotiated and cashed the $5,000 bank money order by presenting such instrument for payment at the Bank of Montreal, in Regina, Saskatchewan, Canada, a financial institution with which the Gajewskis conduct most of their banking business.

While the first appeal in the instant case was pending before this Court, Mr. Neff made no demand for the return of the $5,000 bank money order, nor did he ever draw to this Court's attention the fact that he had mailed such bank money order to the Gajewskis prior to their service, on September 29, 1972, of the notice of appeal.

This Court denied, on August 26, 1974, the Bratchers' petition for rehearing and issued its mandate reversing the district court's judgment and returning the case to the district court on September 10, 1974.

On December 4, 1974, Mr. Neff, after inquiry made to the First International Bank of Watford City, North Dakota, discovered that the Gajewskis had negotiated and cashed, on August 13, 1974, the $5,000 bank money order. On February 11, 1975, Mr. Neff mailed a letter to the Gajewskis, on behalf of the Bratchers, requesting return of the $5,000; and also requesting that the Gajewskis meet with Mr. Neff to "discuss this matter."

By letter dated February 19, 1975, the Gajewskis replied to Mr. Neff's February 11, 1975, letter, stating that "we are still interested in a quit claim from the defendants" and that "When you have this in your

hand, we should then be in a position to negotiate all remaining facets of the case", including the four causes of action which had been reinstated by the Supreme Court after disposition of the first appeal. No offer to return the $5,000 was made by the Gajewskis in their letter to Mr. Neff.

The Bratchers thereafter sought relief pursuant to Rule 60(b), N.D.R.Civ.P.

## I.

In this appeal, we are first presented with the Bratchers' contention that the Gajewskis have lost their right to appeal from the district court's order granting the Bratchers' Rule 60(b), N.D.R.Civ.P., motion. The Bratchers contend that the Gajewskis voluntarily acquiesced in and recognized the validity of the district court's order granting the Bratchers' Rule 60(b), N.D.R.Civ.P., motion, thereby waiving the Gajewskis' right to appeal from such order. In support of their contention, the Bratchers refer us to two cases: *In re McKee's Estate*, 69 N.D. 203, 285 N.W. 72 (1939); *Culbertson v. Culbertson*, 533 P.2d 768 (Nev.1975).

In *In re McKee's Estate, supra,* this Court was presented with the following series of procedural events in a case where a party was seeking to contest a will after it was admitted to probate:

1. McKee instituted a proceeding in the County Court of Stutsman County to contest a will after its probate. Buck et al. filed a general demurrer to the petition. The county court sustained such demurrer.

2. McKee appealed the county court's order to the district court, and the district court affirmed.

3. McKee then appealed to the Supreme Court, which reversed the order of the district court and remanded the case for further proceedings.

4. After remand, the county court conducted further proceedings, and thereafter dismissed the action.

5. McKee appealed such dismissal to the district court, which reversed the order of the county court and remanded the case for further proceedings.

6. The county court thereafter ordered that the probate be reopened and declared that the will was invalid.

7. Buck et al. filed an application for a rehearing in the county court, which denied such application.

8. After the county court denied Buck et al.'s application for a rehearing, Buck et al. appealed to the Supreme Court from the order of the district court [described in No. 5], which had reversed county court's dismissal of McKee's action.

This Court concluded that Buck et al. had waived the right to appeal from the order of the district court [No. 5 above]. In so ruling, the Court said that Buck et al., by filing an application for a rehearing in the county court, clearly recognized that it was the county court which had jurisdiction over the action at the time in question and therefore it was the county court which had the right to proceed after remand from the district court. Buck et al. did not seek to appeal from the district court's decision remanding the cause for further proceedings until after the county court had conducted further proceedings consistent with the district court's order and had rendered a decision which was unfavorable to the position advocated by Buck et al. Under those circumstances, this Court concluded that Buck et al. had waived the right to have the district court's order reviewed by an appellate court.

We believe that the situation presented to this Court by the Gajewskis' appeal from the district court's order granting the Bratchers' Rule 60(b) motion does not fall within the purview of *In re McKee's Estate, supra*. Unlike the situation presented in *McKee's Estate*, the Gajewskis did not act in a manner inconsistent with the district court's order granting the Bratchers' motion. Rather, the Gajewskis' motions under Rules 52(b) and 60(b) were in opposition to the order of the district court granting the Bratchers' motion seeking relief from the decision of this Court. The Gajewskis, by their motions under Rules

52(b) and 60(b) were seeking to set aside or amend the district court's judgment by requesting that the same court which rendered such order review and alter its own position. Much the same situation would have been presented to this Court in *McKee's Estate* if Buck et al. had sought to appeal from the county court's denial of their application for rehearing, rather than attempt to appeal from the district court's order only after the county court had rendered a decision contrary to the position which Buck et al. had been asserting through the course of the proceedings.

We do not find an inconsistency between the order of the district court granting the Bratchers' Rule 60(b) motion and the motions filed thereafter by the Gajewskis. In both such motions, the Gajewskis were challenging the correctness of the district court's order. An appeal from such order also challenges the correctness of the district court's order. We conclude that the Gajewskis, by seeking relief from the district court's order pursuant to either Rule 52(b) or Rule 60(b), N.D.R.Civ.P., were not acquiescing in or recognizing the validity of the district court's order reinstating the original judgment in this case. Consequently, we conclude that *In re McKee's Estate, supra,* does not preclude our review of the district court's order granting the Bratchers' Rule 60(b), N.D.R.Civ.P., motion.

The Bratchers have also referred us to *Culbertson v. Culbertson,* 533 P.2d 768 (Nev.1975), as authority for their contention that the Gajewskis have waived their right to appeal from the district court's order granting the Bratchers' Rule 60(b) motion. We do not agree. In *Culbertson,* the issue was whether or not the former wife, by cashing a check and keeping the proceeds thereof, had accepted the benefits of a judgment entered in a marriage dissolution action. Such issue, however, is not the issue we are considering in this portion of the appeal now before us, and is more appropriately considered when we deal with the issue hereinbefore denominated as No. 3. The *Culbertson* decision in no way supports the Bratchers' claim that the Gajewskis, by

following the procedure that they did, waived their right to appeal from the district court's order granting the Bratchers' Rule 60(b) motion and ordering the reinstatement of the original judgment quieting title to the land in the Bratchers.

We therefore conclude that the issue challenging the validity of the district court's order dated July 1, 1975, reinstating the original district court judgment, is properly before this Court for review.

## II.

■ Secondly, did the district court have jurisdiction to hear the Bratchers' motion, pursuant to Rule 60(b), N.D.R.Civ.P., for relief from the decision of this Court in *Gajewski v. Bratcher,* 221 N.W.2d 614 (N.D. 1974)?

Rule 60(b), N.D.R.Civ.P., states:

"*(b) Mistakes—Inadvertence—Excusable neglect—Newly discovered evidence—Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order in any action or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than 1 year after the judgment or order was entered in the action or proceeding. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. *Leave to make the motion need*

*not be obtained from any appellate court except during such time as an appeal from the judgment is actually pending before such court.* This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Rule 4(e)(8) of these rules, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." [Emphasis added.]

The provisions of Rule 60(b), N.D.R.Civ.P., are drawn from Rule 60(b) of the Federal Rules of Civil Procedure, which became effective as amended in 1948. Wright & Miller, 11 Federal Practice and Procedure, p. 139, n. 1. We therefore believe that it is appropriate to review the decisions of the federal courts which construe and apply the provisions of Rule 60(b), F.R.Civ.P. However, in so doing, we must also bear in mind that the sentence emphasized in the above quotation from Rule 60(b), N.D.R.Civ.P., does not appear in Rule 60(b), F.R.Civ.P., even though an amendment setting forth somewhat similar language was proposed in 1954 to such federal rule. 7 Moore's Federal Practice, *supra,* ¶ 60.30[2], n. 27, p. 429.[2]

There is conflicting authority in the federal courts on the question of the district court's jurisdiction to set aside the decision of an appellate court. Early decisions generally adopted the view that a district court was without jurisdiction to hear a motion pursuant to Rule 60(b) to set aside an appellate court's decision without leave first being granted to the district court by the appellate court which rendered the decision being challenged. 7 Moore's Federal Practice ¶ 60.30[2], pp. 424–429; Wright & Mil-

ler, 11 Federal Practice & Procedure: Civil § 2873, pp. 266–270. The history of the treatment of this question is summarized in 11 Federal Practice & Procedure, *supra,* § 2873 at 266–267:

"The power of the district court to act on a Rule 60(b) motion after the appellate court has finished with the case raises different problems. It attracted little attention until 1953. Some of the earlier opinions, including several by Judge Charles E. Clark, the draftsmen of the rules, pointed out that the rules did not require appellate permission for the district court to consider the motion when the case no longer was pending in the appellate court, and held accordingly that the district court could act without permission. Other decisions applied, with no analysis and little consideration, the requirement of appellate leave that had been applicable prior to adoption of the Civil Rules.

"Then one court of appeals was confronted with a hard case [*Butcher & Sherrerd v. Welsh,* C.A.3d 1953, 206 F.2d 259, certiorari denied 74 S.Ct. 312, 346 U.S. 925, 98 L.Ed. 418]. It involved a persistent litigant who had previously been before the court of appeals four times, and who had 14 times sought review in the Supreme Court by means of petitions for certiorari, motions for rehearings of denials of certiorari, and applications for leave to file yet more motions for rehearing. Ultimately his persistence was rewarded when a district judge granted his motion under Rule 60(b) to reopen the judgment.

"The appellate court responded decisively. It handed down a striking opinion, loaded with quotable epigrams, in which it announced that a district judge lacks jurisdiction to grant a Rule 60(b) motion reopening a judgment that has been affirmed on appeal unless the appellate court has first given leave. It granted writs of prohibition and mandamus

---

2. "Such motion does not require leave from an appellate court, though the judgment has been affirmed or settled upon appeal to that court."

requiring the district judge to vacate his order allowing a new trial."

In contrast, the United States Circuit Court of Appeals for the Tenth Circuit, in *Wilkin v. Sunbeam Corporation,* 405 F.2d 165 (10th Cir. 1968), concluded that it was unnecessary for a movant to seek permission of the appellate court before filing his motion pursuant to Rule 60(b), F.R.Civ.P., in the district court. In reaching such conclusion, the Court reviewed the practice under Rule 60(b). We quote from their opinion in *Wilkin, supra* 405 F.2d at 165–166, as follows:

"A motion has been filed with this court requesting leave to file in the trial court a motion for a new trial pursuant to Rule 60(b), Federal Rules Civil Procedure, alleging newly discovered evidence which was fraudulently concealed by the defendant.

"The Advisory Committee on Rules for Civil Procedure characterized the requirement of seeking permission to file a motion such as the instant one a 'barren requirement' and a 'useless and delaying formality.' In their 1955 Report the Committee proposed the following addition to Rule 60(b): 'Such motion does not require leave from an appellate court, though the judgment has been affirmed or settled upon appeal to that Court.' This proposed amendment has been criticized as unnecessarily undermining the finality of judgments. 7 Moore's Federal Practice, 60.30[2], page 341. Professor Moore suggests that the appellate courts could properly 'screen out attacks that are clearly without merit' and grant leave if 'a prima facie case of merit is made out.' Representative cases holding that leave must be sought from the appellate court are *Wilson Research Corporation v. Piolite Plastics Corporation,* 336 F.2d 303 (1st Cir. 1964) and *Tribble v. Bruin,* 279 F.2d 424 (4th Cir. 1960).

"Rule 60(b) was said not to require a preliminary petition in the appellate court for permission to re-open in the district court in *Perlman v. 322 West Seventy-Second Street Co.,* 127 F.2d 716

(2nd Cir. 1942). Accord, *Von Wedel v. McGrath,* 100 F.Supp. 434 (D.C.N.J.1951), affirmed 194 F.2d 1013 (3rd Cir. 1952). See also *S. C. Johnson & Son v. Johnson,* 175 F.2d 176 (2nd Cir. 1949) (dissenting opinion), cert. denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527 (1949). *These cases referred to the fact that a 60(b) motion 'does not affect the finality of a judgment' as expressly provided in the rule. They also emphasize that the place to make a record is the district court and not the appellate court.* See also *Schildhaus v. Moe,* 335 F.2d 529 (2nd Cir. 1964) and *Nelson v. Meehan,* 155 F. 1, 12 L.R. A.,N.S., 374 (9th Cir. 1907). [Emphasis added.]

"In *Wilson Research Corporation v. Piolite Plastics Corporation,* supra; the court held that the district court properly declined to act upon the motion without leave of the appellate court, but the First Circuit then entered an order granting the district court leave to consider the motion 'since a trial court is in a much better position to pass upon the issues presented by motions for new trials on the ground of newly discovered evidence than appellate courts * * *.' 336 F.2d at 305.

"We agree that the trial court is in a better position to pass upon the issues presented in a motion pursuant to Rule 60(b). Accordingly, we hold that there is no necessity that a preliminary petition requesting permission be filed with the appellate court."

We agree with the reasoning of the United States Circuit Court of Appeals for the Tenth Circuit, especially when we consider the additional sentence in Rule 60(b), N.D. R.Civ.P., which states:

"Leave to make the motion need not be obtained from any appellate court except during such time as an appeal from the judgment is actually pending before such court."

■ In the instant case, the appeal by the Gajewskis from the district court's original judgment was no longer pending in this Court after our mandate had issued on Sep-

tember 10, 1974. We therefore conclude that it was not necessary for the Bratchers to obtain permission of this Court before filing in the district court[3] their motion pursuant to Rule 60(b), N.D.R.Civ.P.

The Gajewskis also contend that the district court erred in failing to enter judgment on remand as directed by this Court. In paragraph 9 of its July 1, 1975 "Findings, Conclusions . . .", the district court stated:

"9.

"*That no form of Judgment on Remand was tendered to the trial Court until the day before the resumption of the adjourned hearing on the Defendants' Motion,* the extension on the hearing being given only for the purpose of giving the Plaintiffs an opportunity to present to the Court further evidence as to the account into which the proceeds of the said bank money order were deposited. That for this Court to enter Judgment on Remand conformable with the Supreme Court decision would be a fraud upon the Supreme Court and this Court." [Emphasis added.]

Although we do not deem such question to be significant in our disposition of this case, we will nonetheless briefly review such portion of the order.

The Gajewskis do not challenge the validity of that portion of paragraph 9 emphasized above, but they do contest the conclusion drawn therefrom by the district court.

■ In our decision in *Gajewski v. Bratcher, supra,* we directed the district court to enter judgment in conformity with this Court's ruling. The district court did not do so, and its failure to supervise the entry of judgment on remand was clearly error. In order to properly complete all procedural steps in the instant case, the district court should have entered judgment on remand in accordance with this Court's

directions within a reasonable time after this Court's mandate had issued. We believe that it is the duty of the district court to see that our directions to it are properly carried out upon remand of a case to the district court. Failure of a party to tender a proposed judgment on remand does not relieve the district court of its responsibility to comply with our orders and directions after an appeal is taken and resolved. This Court's order is not directed to counsel or the parties, but to the district court, and it is the district court's duty to see that this Court's mandate is fully and completely carried out after the mandate is issued.

■ We do not believe, however, that the district court's failure to enter a judgment on remand affects the appeal in this case. The district court had jurisdiction whether or not judgment on remand was entered. All parties fully understood that the Bratchers were seeking to set aside this Court's decision in *Gajewski v. Bratcher, supra.* An error that does not affect the substantial rights of either party is not a ground for setting aside a judgment or order. Rule 61, N.D.R.Civ.P. Since the error is harmless, it does not affect our disposition of this appeal.

We therefore conclude that the district court had jurisdiction to entertain and decide the Bratchers' motion for relief from the decision of this Court.

III.

We must next determine whether or not the district court erred in granting the Bratchers' motion, made pursuant to Rule 60(b), N.D.R.Civ.P., to set aside the decision of this Court, and in ordering the reinstatement of the district court's original judgment (dated August 4, 1972), which judgment quieted title to the land in the Bratchers.

---

3. In addition, the Bratchers originally filed their motion with this Court. After denial of such motion, this Court, by letter from the Clerk of Court, suggested that the Bratchers pursue their claim for relief in the district court. Even if we were to require that the movant receive the permission of this Court before the district court could entertain a motion pursuant to Rule 60(b), N.D.R.Civ.P., in the instant case, we deem such letter to be the leave which would then be required under such an approach to this question.

In its "Findings, Conclusions and Order Granting Defendants Bratcher Motion for Relief Under Rule 60(b), N.D.R.Civ.P. and Reinstating District Court Judgment", the district court stated, in part:

"3.

"That on August 28, 1972, LaVern C. Neff, one of the attorneys for the Bratchers and on behalf of Glenna I. Gajewski, and in satisfaction of and pursuant to the Judgment aforesaid transmitted to Loren R. Gajewski and Mervin A. Gajewski that certain bank money order for $5,000.00 dated November 26, 1966 drawn on the First International Bank of Watford City, North Dakota and payable to the order of 'L.R. Gajewski or Loren Gajewski or Mervin Gajewski.'

"4.

"That thereafter Plaintiffs Gajewski took an appeal from said District Court Judgment to the North Dakota Supreme Court. That on June 27, 1974 the Supreme Court rendered its decision in *Gajewski v. Bratcher*, 221 N.W.2d 614 (N.D. 1974) reversing the Judgment of the District Court.

"5.

"That on July 11, 1974 the Defendants Appellees Bratcher filed a Petition for Rehearing with the Supreme Court of the State of North Dakota.

"6.

"That on August 13, 1974 Loren Gajewski, one of the Plaintiffs in the above entitled action endorsed and cashed the $5,000.00 bank money order referred to above by depositing the proceeds thereof in the Bank of Montreal, Regina, Saskatchewan, Canada, while the Petition for Rehearing was pending in the Supreme Court.

"7.

"That on August 26, 1974, the North Dakota Supreme Court entered its Order denying the Defendants-Appellees Bratcher Petition for Rehearing.

"8.

"That the $5,000.00 bank money order was in the actual or constructive possession of the Plaintiffs Loren Gajewski and Mervin Gajewski from date of receipt on or about August 28, 1972 to August 13, 1974. The Court makes a finding that Plaintiffs acted in concert and without objection from or by Mervin Gajewski as to the handling of the bank money order. That the Court further finds that both Loren R. Gajewski and Mervin Gajewski are bound by the conduct of Loren R. Gajewski in the cashing of the said bank money order and by his or their failure to account for the manner in which or to which account in the Bank of Montreal, Regina, Saskatchewan, Canada the proceeds of the said bank money order were deposited after having been given the opportunity by the Court to do so.

"The Court draws the inference that said money was deposited to the joint credit of both Plaintiffs in the Regina, Saskatchewan, Canada bank.

"9.

"That no form of Judgment on Remand was tendered to the trial Court until the day before the resumption of the adjourned hearing on the Defendants' Motion, the extension on the hearing being given only for the purpose of giving the Plaintiffs an opportunity to present to the Court further evidence as to the account into which the proceeds of the said bank money order were deposited. That for this Court to enter Judgment on Remand conformable with the Supreme Court decision would be a fraud upon the Supreme Court and this Court.

"10.

"That the trial court finds that the cashing of the $5,000.00 bank money order by the Plaintiffs constitutes acceptance of the benefits of the District Court Judgment by the Plaintiffs, Loren R. Gajewski and Mervin A. Gajewski while final determination of said appeal was pending. That the Court applies the rule set forth in *Miller v. Miller* [76 N.D. 558] 38 N.W.2d 35, 45 (N.D.1949) in which the Court states:

"'It is a general rule approved by the great weight of authority including the decisions of this Court that a party who

knowingly accepts a substantial benefit under a judgment is precluded from afterward assailing the correctness or validity thereof. It is held that such acceptance operates as a waiver or release of errors and irregularities, and estops the party who accepts the benefit from afterward moving to vacate the judgment.'

" 'See also *Tyler v. Shea,* 4 N.D. 377, 61 N.W. 468 (1894)'

"11.

"That such acceptance by the Plaintiffs Gajewski of the proceeds of the said bank money order requires this Court to relieve the Bratchers of the enforcement against them of the Supreme Court decision rendered in this case in 221 N.W.2d 614 (N.D.1974), on the following grounds:

"a. That such act and conduct by the Plaintiffs constituted 'misconduct of an adverse party' under Rule 60(b)(2) N.D. R.Civ.P.

"b. That such act or conduct by the Plaintiffs in cashing said $5,000.00 bank money order on August 13, 1974 after the Supreme Court issued its opinion on June 27, 1974 but before the denial of the Defendants Bratcher's Petition for Rehearing constituted a 'fraud' upon this Court and upon the Supreme Court under Rule 60(b)(3) N.D.R.Civ.P.

"c. That such act and conduct is a 'satisfaction, release or discharge' of the District Court Judgment by the Plaintiffs under Rule 60(b)(5) N.D.R. Civ.P.

"d. That such act or conduct by the Plaintiffs makes it no longer equitable that the decision and opinion of the North Dakota Supreme Court rendered in this case appearing in 221 N.W.2d 614 (N.D.1974) should have prospective application as to the parties under Rule 60(b)(5) N.D.R.Civ.P.

"e. That such act and conduct of the Plaintiffs in cashing sadi [sic] $5,000.00 bank money order and accepting the benefits of the District Court Judgment precludes the Plaintiffs Gajewski

from assailing the correctness or validity of the Judgment under which they accepted the benefits and under the decision of the North Dakota Supreme Court, *Miller v. Miller, supra* and *Tyler v. Shea, supra* and estops the Plaintiffs Gajewski and as such is a further reason justifying release from the operation of the Decision and the opinion of the North Dakota Supreme Court under Rule 60(b)(6) N.D.R.Civ.P.

"IT IS HEREBY ORDERED that the Defendants Bratcher's Motion for Relief under Rule 60(b) N.D.R.Civ.P. be and it is hereby granted and that the Plaintiffs Loren R. Gajewski and Mervin A. Gajewski, be and hereby are until further order of the Supreme Court of North Dakota enjoined from obtaining or receiving any right or benefit under or from the mandate and opinion of the North Dakota Supreme Court in *Gajewski v. Bratcher,* 221 N.W.2d 614 (N.D.1974).

"IT IS HEREBY FURTHER ORDERED that the Plaintiffs Gajewski having accepted the benefits under and by virtue of the District Court Judgment entered August 4, 1972, in McKenzie County, North Dakota Civil No. 3316 that such Judgment is reaffirmed and reinstated and remains in full force and effect as to the Plaintiffs Gajewski, their successors or assigns.

"Dated at Williston, North Dakota this *1st* day of *July* 1975."

The Gajewskis, in this appeal, essentially challenge all or part of paragraphs numbered 3, 10, and 11, as well as the validity of the district court's order based upon the findings of fact and conclusions of law contained therein. Because the district court's findings of fact and conclusions of law are all contained in the same paragraphs, it will be necessary for us to determine, as we dispose of the Gajewskis' challenges, which statements are findings of fact and which statements are conclusions of law.

The well settled rule in this State is that, on appeal, findings of fact of the district court will not be set aside unless they are clearly erroneous, while conclu-

sions of law are fully reviewable by this Court. Rule 52(a), N.D.R.Civ.P.; *Stockmen's Ins. Agcy., Inc. v. Guarantee Res. L. Ins. Co.*, 217 N.W.2d 455, Syll. ¶ 5 (N.D. 1974); *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973). Whether a particular finding is a finding of fact or a conclusion of law will be determined by the reviewing court. *Stockmen's Ins. Agcy., Inc. v. Guarantee Res. L. Ins. Co., supra*; *Ferguson v. Ferguson*, 202 N.W.2d 760 (N.D.1972). And, in *Eakman v. Robb*, 237 N.W.2d 423 (N.D.1975), in paragraph 4 of the syllabus, we held that:

"4. A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. The mere fact that the appellate court might have viewed the facts differently, if it had been the initial trier of the case, does not entitle it to reverse the lower court."

■ In *Small v. Burleigh County*, 239 N.W.2d 823 (N.D.1976), where the district court declined to disturb this Court's judgment after being presented with the movant's request for relief under Rule 60(b), N.D.R.Civ.P., we held, in paragraph 1 of the syllabus, that:

"1. Generally, in reviewing a trial court's denial of a motion under Rule 60(b) of the North Dakota Rules of Civil Procedure, the function of the Supreme Court is not to determine whether the trial court was substantively correct in entering the judgment or order from which relief is sought, but is limited to *deciding whether the court abused its discretion* in ruling that sufficient grounds for disturbing the finality of the judgment or order were not shown in a timely manner." [Emphasis added.]

Where we are called upon to review the district court's decision setting aside the decision of this Court, we also determine whether or not the district court abused its discretion in granting the movant's Rule 60(b) motion. Wright & Miller, 11 Federal Practice & Procedure, *supra*; 7 Moore's Federal Practice ¶ 60.19, *supra* at pp. 237–238.

■ However, in determining whether or not the district court abused its discretion in granting the movant relief from the decision of this Court, we must bear in mind that the movant has the burden of establishing sufficient grounds for disturbing the finality of such judgment. *Small v. Burleigh Co., supra* 239 N.W.2d at 826–827. Some of the factors which the Court should consider in ruling on a Rule 60(b) motion are summarized in 7 Moore's Federal Practice ¶ 60.19, *supra* at 237–239, as follows:

"Where the district court has the power to act, pursuant to the provisions of Rule 60(b), relevant propositions and factors that it may consider in exercising its discretion are: *the general desirability that a final judgment should not be lightly disturbed*; the procedure provided by Rule 60(b) is not a substitute for an appeal; the Rule should be liberally construed for the purpose of doing substantial justice; whether, although the motion is made within the maximum time, if any, provided by the Rule, the motion is made within a reasonable time; if relief is sought from a default judgment or a judgment of dismissal where there has been no consideration of the merits, whether in the particular case the interest of deciding cases on the merits outweighs the interest in orderly procedure and in the finality of judgments, and whether there is merit in the defense or claim, as the case may be; if relief is sought from a judgment rendered after a trial on the merits, whether the movant had a fair opportunity to present his claim or defense; *whether there are any intervening equities which make it inequitable to grant relief*; and any other factor that is relevant to the justice of the judgment under attack, bearing always in mind that *the principle of finality of judgments serves a most useful purpose for society, the courts, and the litigants—in a word, for all concerned.*" [Emphasis added.]

A decision to set aside the judgment of this Court after the appeal process has been fully completed, especially where the proceedings have fully adjudicated the rights of the parties on the merits, is a very serious matter. The burden on the moving party to establish sufficient grounds for disturbing the finality of such a judgment is greater than if no decision on the merits has been rendered. *See City of Wahpeton v. Drake-Henne, Inc.,* 228 N.W.2d 324, 330 (N.D.1975); Wright & Miller, 11 Federal Practice and Procedure § 2857.

Where a decision on the merits is being challenged, a key factor which will militate against the interference with such judgment is the policy which favors the finality of judgments once rendered. 7 Moore's Federal Practice ¶ 60.19, *supra* at 239.

We therefore believe that judgments on the merits of a dispute, once rendered by this Court on appeal, after becoming final, should be set aside under Rule 60(b) only in exceptional circumstances where the application of equitable principles demands that such an extraordinary remedy be used to prevent an injustice from occurring. Wright & Miller, 11 Federal Practice and Procedure, *supra*; *Greater Boston Television Corp. v. FCC,* 149 U.S. App.D.C. 322, 463 F.2d 268, 278 (1971); *Hines v. Royal Indemnity Co.,* 253 F.2d 111, 114 (6th Cir. 1958).

As we said in the somewhat analogous factual context presented to us in *Small, supra* 239 N.W.2d at 828:

"To grant the motion to vacate the judgment after the appeal procedures have been fully utilized and the judgment has become final would encourage our people to ignore the law as it exists and, only when caught up in it, to seek its change in the Legislature, hoping thereby to make legal what was found to be illegal through the judicial process."

In Wright & Miller, 11 Federal Practice and Procedure: Civil § 2857, *supra* at 160-162, the application of the policy favoring the finality of judgments to Rule 60(b) motions is described, in general, as follows:

"The cases show that although the courts have sought to accomplish justice, *they have administered Rule 60(b) with a scrupulous regard for the aims of finality.* Thus they have held that the motion must be made within a 'reasonable time,' even though the stated time limit has not expired. They have been *unyielding in requiring that a party show good reason for his failure to take appropriate action sooner.* They have prevented the needless protraction of litigation by requiring the moving party to show a good claim or defense. They have been diligent to consider the hardship that a reopening of the judgment might cause to other persons, and have denied relief when many actions have been taken on the strength of the judgment, or when a party would be unable to obtain his witnesses for a new action, or when many persons had relied on the judgment. *Relief will not be given if substantial rights of the moving party have not been harmed by the judgment."* [Emphasis added.]

We therefore turn to a consideration of the merits on this appeal. The Gajewskis assert that the trial court erred in holding that the Bratchers had substantiated their claim, pursuant to Rule 60(b), N.D.R.Civ.P., for relief from the decision of this Court. Our review of the record shows that the Bratchers' Rule 60(b) motion is grounded upon the assertion that by negotiating and cashing a $5,000 bank money order, transmitted by Mr. Neff to the Gajewskis on August 28, 1972, the Gajewskis accepted the benefits under the district court's original judgment (dated August 4, 1972), and that such action by the Gajewskis was accomplished in a fraudulent and deceptive manner, therefore empowering the district court to set aside this Court's decision pursuant to subdivisions 2, 3, 5, and 6 of Rule 60(b), N.D.R.Civ.P.

The original judgment of the district court, after awarding title to the land to the Bratchers, stated, in part, that:

"ADJUDGED, DETERMINED AND DECREED that there is due and owing

to Loren R. Gajewski and Mervin A. Gajewski the sum of Five Thousand ($5,000.00) Dollars evidenced by tender of Bank Money order drawn upon the First International Bank of Watford City, North Dakota for that amount on November 26, 1966. That said sum without interest is owed by Glenna I. Gajewski to Plaintiffs and upon payment of which the obligation owed by Glenna I. Gajewski to Plaintiffs is fully discharged. That pending acceptance thereof by Plaintiffs the sum of $5,000.00 shall not accrue interest."

Neither Glenna I. Gajewski, nor the Glenna I. Gajewski Estate, after her death in 1969, were ever made a party to this action.

On August 28, 1972, Mr. Neff, as counsel for the Bratchers, mailed to the Gajewskis the $5,000 bank money order, which had been purchased by Glenna I. Gajewski on November 26, 1966. They acknowledged receipt of and possession of such bank money order, but did not undertake to negotiate and cash it until August 13, 1974, which date was after the date of the decision of this Court in *Gajewski v. Bratcher, supra* but before this Court had denied the Bratchers' petition for rehearing.

■ It is the well settled rule in this State that a party who accepts benefits under a judgment cannot thereafter assail, on appeal, such judgment's validity. *Tyler v. Shea,* 4 N.D. 377, 61 N.W. 468 (1894); *First State Bank of Strasburg v. Schmaltz,* 61 N.D. 150, 237 N.W. 644, 647 (1931); *State v. Langer,* Syll. ¶ 1, 64 N.D. 744, 256 N.W. 194 (1934); *Piper v. Piper,* 234 N.W.2d 621 (N.D.1975).

Based upon the facts outlined above, the district court concluded in paragraph 10 of its "Findings, Conclusions . . . [July 1, 1975]" that the Gajewskis had accepted a benefit under the judgment entered by the

district court on August 4, 1972. Such a conclusion of law, naturally, is fully reviewable by this Court on appeal. However, while we express some reservations about the conclusion because of the fact that Glenna I. Gajewski was never a party to these proceedings, our decision in this appeal would be the same even if we also concluded that the Gajewskis' action in negotiating and cashing the bank money order did constitute such acceptance.[4]

Therefore, assuming that the Gajewskis did accept a benefit under the original judgment of the district court, we must next determine whether or not the appropriate remedy, in this case, is relief pursuant to Rule 60(b), N.D.R.Civ.P., from the earlier decision of this Court.

Rule 60(b), N.D.R.Civ.P., in pertinent part, states:

"*(b) Mistakes—Inadvertence—Excusable neglect—Newly discovered evidence —Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order in any action or proceeding for the following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons . . . (2), and

---

4. The Uniform Commercial Code provides that, unlike a personal check, a bank money order extinguishes the debtor's underlying obligation upon tender. § 41–03–76, N.D.C.C. (§ 3–802, U.C.C.); White & Summers U.C.C.HB § 13–20, p. 449 and § 17–5, pp. 578, 579 [West Pub. Co. (1st Rep.1975)]. We therefore believe that it is certainly possible to argue that the Gajewskis

were no more "accepting the benefits" of the judgment by negotiating the instrument than in exercising dominion and control over it upon receipt. This certainly raises the possibility that the Bratchers, even if their assertion were correct, waived any right to raise such issue by failing to present it to this Court during the first appeal.

(3) not more than 1 year after the judgment or order was entered in the action or proceeding. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. . . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Rule 4(e)(8) of these rules, or to set aside a judgment for fraud upon the court. . . ."

Rule 60(b)(2), N.D.R.Civ.P., permits a court to relieve a party from the effect of a judgment upon the ground of newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b), N.D.R.Civ.P. However, the district court, although stating that relief under Rule 60(b)(2) was appropriate, framed its "Findings, Conclusions . . . [July 1, 1975]" in such a manner as to indicate that the court was actually referring to relief under subdivision (3) of Rule 60(b), N.D.R.Civ.P., rather than under subdivision (2) of Rule 60(b). The Bratchers, in their brief and in their oral argument advanced no claim for relief pursuant to Rule 60(b)(2), N.D.R. Civ.P. We therefore deem any claim by the Bratchers for relief pursuant to Rule 60(b)(2) to have been waived on appeal and not before us for review.

The Bratchers vigorously assert, however, that the conduct of the Gajewskis constitutes fraud or other misconduct of an adverse party, justifying relief under subdivision (3) of Rule 60(b), N.D.R.Civ.P. The district court, in paragraphs 10 and 11 of its "Findings, Conclusions . . . [July 1, 1975]", held that the Gajewskis' action in cashing the $5,000 bank money order and in accepting the proceeds thereof constituted "misconduct of an adverse party" and a "fraud" upon both the Supreme Court and the district court.

Relief under subdivision (3) of Rule 60(b), N.D.R.Civ.P., is extraordinary relief, to be granted only in exceptional circumstances. *Posttape Associates v. Eastman Kodak Co.,* 68 F.R.D. 323, 327 (E.D.Penn.1975). The burden is on the movant to establish, by clear and convincing evidence, that the adverse party obtained the judgment through fraud, misrepresentation, or misconduct. *Abel v. Tinsley,* 338 F.2d 514 (10th Cir. 1964); *Brown v. Pennsylvania Railroad Company,* 282 F.2d 522, 527 (3d Cir. 1960), *cert. den.* 365 U.S. 818, 81 S.Ct. 690, 5 L.Ed.2d 696 (1961); *Atchison, Topeka and Santa Fe Railway Co. v. Barrett,* 246 F.2d 846 (9th Cir. 1957); *Assmann v. Fleming,* 159 F.2d 332 (8th Cir. 1947); *Gilmour v. Strescon Industries, Inc.,* 66 F.R.D. 146, 153 (E.D.Penn.1975); Wright & Miller, 11 Federal Practice and Procedure: Civil § 2860.

We have carefully reviewed the record in the instant case to see what evidence of fraud or misconduct was before the district court. The evidence before the district court showed that the Gajewskis, after the decision of this Court but before our mandate had issued, cashed a $5,000 bank money order over which they had had dominion and control for approximately two years. Until December 4, 1974, Mr. Neff, being the person who transmitted such instrument to the Gajewskis, exhibited no interest in or desire to recover the bank money order. In his affidavit in support of the Bratchers' Rule 60(b) motion, Mr. Neff stated that "The Defendants, Bratcher, assumed . . . that the $5,000.00 bank money order would be returned in due course". Any claim that the Bratchers may assert to the same $5,000 is not within the purview of this lawsuit, and is simply outside of the record in this appeal.

Despite Mr. Neff's discovery of the negotiation and cashing of the bank money order on December 4, 1974, no attempt was made by the Bratchers to set aside the decision of this Court until April 18, 1975, which was approximately seven months after this Court had issued its mandate in *Gajewski v. Bratcher, supra.* Because of Mr. Neff's action in representing to the Gajewskis that he was claiming the $5,000 on behalf of the Bratchers, there is some

validity to the Gajewskis' assertion that if they paid $5,000 to the Bratchers, the Glenna I. Gajewski Estate would possibly thereafter seek an additional $5,000 from them for its rightful claim. Such a position is not so totally outrageous that no credence should be attached to it. However, there is no doubt that the Gajewskis cannot retain both the $5,000 and the land.

Even if the Bratchers had succeeded in establishing, by clear and convincing evidence that the Gajewskis acted fraudulently, such finding does not automatically require that the previous judgment be set aside. Every case of fraud in obtaining a judgment does not justify relief from such judgment. 46 Am.Jur.2d, Judgments § 709, p. 863. *See Scheel v. Superior Manufacturing Co.,* 249 Iowa 873, 89 N.W.2d 377, 382 (1958). A motion for relief from a judgment should not be used as a substitute for a separate independent action. 46 Am.Jur.2d, Judgments, *supra.* Where the irregularity which is complained of can be more appropriately cured by another remedy, a judgment of the appellate court should not be set aside or vacated. *See* 46 Am.Jur.2d, Judgments § 767, p. 928; *cf. Oransky v. Stepanavich,* 304 Pa. 84, 155 A. 290, 77 A.L.R. 983 (1931).

We believe that the district court, in the instant case, abused its discretion in setting aside, pursuant to Rule 60(b)(3), N.D.R.Civ.P., the decision of this Court quieting title to the land in the Gajewskis. Our conclusion is based upon the following factors:

1. The decision of this Court had been final for over seven months before any attempt was made to set it aside.

2. The evidence is not clear and convincing that the Gajewskis' conduct was fraudulent.

3. A more appropriate remedy would have been an independent action by those deeming themselves entitled to the $5,000.

4. Serious question exists as to the jurisdiction of the district court to "order", as it apparently attempted to do in its original judgment (dated August 4, 1972), that a non-party, Glenna I. Gajewski (or her estate), owed $5,000 to the Gajewskis.

5. The negotiation and cashing of a bank money order may not be any more legally significant, under the Uniform Commercial Code, than the exercise of dominion and control over such instrument for two years.

6. Mr. Neff did not bring to the attention of this Court, in the first appeal of this case, the transmittal of such bank money order to the Gajewskis, nor of its possession by the Gajewskis.

7. The district court failed to consider possible alternative remedies which would not conflict with the judgment of this Court.

We therefore conclude that relief pursuant to Rule 60(b)(3), N.D.R.Civ.P., in the instant case, was not an appropriate remedy (we defer consideration of the "fraud on the court" claim until our discussion of Issue No. 4 below), and conclude that the district court, based upon the facts and circumstances hereinbefore set forth, abused its discretion in granting such relief.

However, the Bratchers also contend that relief pursuant to subdivisions (5) and (6) of Rule 60(b), N.D.R.Civ.P., was appropriately granted in the instant case. Relief pursuant to Rule 60(b)(5) may be granted when the judgment has been "satisfied, released, or discharged". In view of our discussion of the evidence in connection with the Bratchers' Rule 60(b)(3) claim, we cannot agree with the district court's conclusions that its original judgment (dated August 4, 1972) was "satisfied, released, or discharged". Furthermore, relief pursuant to such clause of Rule 60(b)(5) should not be easily granted when the rights of a third party are involved. Wright & Miller, 11 Federal Practice and Procedure: Civil § 2863, p. 202.

Rule 60(b)(5), N.D.R.Civ.P., also permits relief from a judgment when it is no longer equitable that such judgment be given prospective application. This portion of Rule 60(b)(5) is generally applied to re-

quests for relief from an injunction. *City of Wahpeton v. Drake-Henne, Inc.,* 228 N.W.2d 324, 329 (N.D.1975); Wright & Miller, 11 Federal Practice and Procedure: Civil § 2863, *supra* at p. 205. *See* Annotation, 14 A.L.R.Fed. 309, 315. However, such portion of Rule 60(b)(5), according to Wright & Miller, *supra* "applies to any judgment that has prospective effect as contrasted with those that offer a present remedy for a past wrong". In *Ryan v. U. S. Lines Co.,* 303 F.2d 430, 434 (2d Cir. 1962), the United States Court of Appeals for the Second Circuit concluded that a judgment for money damages is not a judgment of prospective application within Rule 60(b)(5), F.R.Civ.P. *But, see, Bros, Inc. v. W. E. Grace Manufacturing Co.,* 320 F.2d 594, 610 (5th Cir. 1963). In the instant case we believe that a judgment which quiets title to land, although certainly having an impact on future dealings with such land, is not a judgment having prospective application within the meaning of such term in Rule 60(b)(5), N.D.R.Civ.P. *See, Small v. Burleigh Co., supra* [decided March 12, 1976].

We conclude that the district court erred in granting the Bratchers' motion, pursuant to Rule 60(b)(5), N.D.R.Civ.P., for relief from this Court's decision.

Finally, the Bratchers contend that the district court properly granted relief pursuant to Rule 60(b)(6), N.D.R.Civ.P. Subdivision (6) of Rule 60(b), N.D.R.Civ.P., permits the court to grant relief from a judgment for "any other reason" justifying such relief. Three recent decisions of this Court have addressed the question of relief pursuant to Rule 60(b)(6): *Small v. Burleigh Co., supra* [decided March 12, 1976]; *City of Wahpeton v. Drake-Henne, Inc., supra;* and *Hefty v. Aldrich,* 220 N.W.2d 840 (N.D. 1974).

■ In *Hefty v. Aldrich, supra* 220 N.W.2d at 846, this Court discussed relief pursuant to Rule 60(b)(6), N.D.R.Civ.P., stating:

"Rule 60(b)(6) provides an extraordinary procedure:

" '. . . an avenue for escape from the judgment, unhampered by detailed restrictions, and the courts have used this clause in a wide variety of situations.' *In re Braun,* 145 N.W.2d 482, 484 (N.D.1966).

But the use of the rule is limited by many considerations. It is not to be used as a substitute for appeal. *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). It is not to be used to relieve a party from free, calculated, and deliberate choices he has made. *In re Braun, supra.* It is not to be used in cases where subdivisions (1) to (5) of Rule 60(b) might be employed—it and they are mutually exclusive. Wright & Miller, Federal Practice and Procedure, Sec. 2864. Yet 60(b)(6) can be used where the grounds for vacating a judgment or order are within any of subdivisions (1) to (5), but 'something more' [*Bros., Incorporated v. W. E. Grace Manufacturing Co.,* 320 F.2d 594, 609 (CA5 1963)] or 'extraordinary' [*Ackermann v. United States, supra* ] which justifies relief from the operation of the judgment must be present."

■ We reaffirmed, in *Small, supra,* and in *City of Wahpeton, supra,* that relief pursuant to Rule 60(b)(6) is only available where the movant shows "something more or extraordinary" justifying such relief. See also Wright & Miller, 11 Federal Practice and Procedure: Civil § 2864. In view of our conclusion that the district court erred in granting the Bratchers' motion for relief pursuant to subdivisions (2), (3), and (5) of Rule 60(b), the sole remaining ground for such relief is subdivision (6) thereof. However, the Bratchers are unable to articulate anything more justifying such relief, other than their assertions hereinbefore discussed in relation to their request for relief under subdivisions (2), (3), and (5) of Rule 60(b). It would be incongruous for us to conclude that relief under subdivision (6) of Rule 60(b) is justified when we have already determined that the Bratchers failed to meet their evidentiary burden under Rule 60(b)(3), when we have concluded that, in any event, relief pursuant to Rule 60(b) is not the most appropriate remedy availa-

ble in this case, and when we have also concluded that subdivision (5) was not applicable under the facts and circumstances of this case. Like this Court's conclusion in *Hefty, City of Wahpeton,* and *Small, supra,* we find nothing extraordinary justifying relief pursuant to Rule 60(b)(6), N.D.R. Civ.P., and conclude that the district court clearly abused its discretion in applying the provisions of subdivision (6) of Rule 60(b) in the instant case.

In summary, we conclude that the district court abused its discretion in granting the Bratchers' motion pursuant to Rule 60(b), N.D.R.Civ.P., for relief from the decision of this Court in *Gajewski v. Bratcher, supra,* and we therefore reverse the district court's order setting aside this Court's decision. As we said in paragraph 8 of the syllabus in *City of Wahpeton, supra* 228 N.W.2d at 326:

> "8. There must be an end to litigation so that suits may not be immortal, while men are mortal."

In the instant case, in view of the factors hereinbefore set forth, we view the equities involved as requiring that the district court's July 1, 1975, order be reversed and the decision of this Court be reinstated.

## IV.

The fourth issue presented for our review is the Gajewskis' challenge to the district court's holding that their conduct constituted a fraud upon this Court and upon the district court. Because of the serious nature of such decision, we elect to treat this question separately from our consideration of Issue No. 3 above.

We note that the Bratchers, in their original motion to the district court, made no claim that the Gajewskis' conduct constituted fraud upon the court. However, during the hearing the district court raised such issue, and thereafter held that the Gajewskis' conduct did constitute a fraud upon both the Supreme Court and the district court. Because we have determined that the evidence is insufficient to establish a fraud on the court in the instant case, we find it unnecessary to reach the Gajewskis' apparent claim that such issue was never properly pled nor heard by the district court. In Wright & Miller, 11 Federal Practice and Procedure: Civil § 2870, a thorough review of the treatment of fraud-on-the-court claims is presented, as follows:

> "§ 2870. Fraud on the Court

> "The power to vacate a judgment that has been obtained by fraud upon the court is inherent in courts. Indeed even the strong statutory policy of finality of judgments of the Tax Court yields to this inherent power, on the theory that 'a decision produced by fraud on the court is not in essence a decision at all and never becomes final.'

> "Thus the final saving clause of Rule 60(b), added in 1948, provides that the rule does not limit the power of a court to set aside a judgment for fraud upon the court. . . .

> ". . . The power exists in every court. *If the fraud was on an appellate court, that court, rather than the trial court, should consider the matter.* Although a party may bring the matter to the attention of the court, this is not essential, *and the court may proceed on its own motion.* The fact that there are no adversary parties on the claim of fraud on the court does not deprive the court of jurisdiction. Since the original judgment, by hypothesis, must have been given in a 'case or controversy,' the court continues to have ancillary jurisdiction to determine whether it has been the victim of a fraud.

> "There is no time limit on setting aside a judgment on this ground, nor can laches bar consideration of the matter. It does not matter whether a party bringing the fraud to the court's attention has clean hands.

> "If it is found that there was a fraud on the court, the judgment should be vacated and the guilty party denied all relief. The entire cost of the proceedings, including attorneys' fees, may be assessed against that party. . . .

"Since the power to vacate a judgment for fraud on the court is so great, and so free from procedural limitations, it is important to know what kind of conduct falls into this category. Several definitions have been attempted. A number of courts have accepted the suggestion of a distinguished commentator that 'fraud upon the court' is fraud that 'does, or attempts to,. defile the court itself,' or that is 'perpetrated by officers of the court *so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'*

"The Ninth Circuit has offered a different definition, saying that 'to set aside a judgment or order because of fraud upon the court * * * it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.' [*England v. Doyle,* C.A.9th, 1960, 281 F.2d 304, 309.] Later, however, that same court said that the distinction between 'fraud' and 'fraud upon the court' is by no means clear, and most attempts to state it seem to us merely compilations of words that do not clarify.'

"Still more recently a commentator has attempted yet a third formulation, though it may well be that it is subject to the same criticism that the Ninth Circuit directed at its own attempt at definition:

" 'Thus, fraud upon the court embraces a wider scope of fraud than that directed only against public organs of justice; it may in appropriate circumstances extend to a case where injury to the public is primarily and extraordinarily involved. However, *there is no reason to believe it includes all forms of fraud.'*

"Perhaps the principal contribution of all of these attempts to define 'fraud upon the court' and to distinguish it from mere 'fraud' is as a reminder that there is a distinction. *Any fraud connected with the presentation of a case to a court is a fraud upon the court, in a broad sense.* That cannot be the sense in which the term is used in the final saving clause of Rule 60(b). *The remedy for most cases of fraud must continue to be by motion under Rule 60(b)(3) or by an independent action,* subject to the procedural limitations applicable to those remedies. The draftsmen must have conceived of 'fraud upon the court,' as they used that phrase, as referring to *very unusual cases involving 'far more than an injury to a single litigant.'*

"Thus the courts have refused to invoke this concept in cases in which the wrong, if wrong there was, was only between the parties in the case and involved *no direct assault on the integrity of the judicial process. Nondisclosure by a party or his attorney has not been enough.*

"The cases in which it has been found that there was, or might have been, a 'fraud upon the court,' for the most part, have been cases in which there was 'the most egregious conduct involving a corruption of the judicial process itself.' The concept clearly includes bribery of a judge or the employment of counsel in order to bring an improper influence on the court. . . ." [Emphasis added.]

 We are initially presented with the Gajewskis' claim that they are not officers of the court; therefore, they could not, in any case, perpetrate a fraud upon such court. We do not agree. Even a party proceeding *pro se* to present his case in court is required to scrupulously guard the integrity of the judicial process. The standard for honesty and good faith is no lower for a person proceeding *pro se* than for an attorney who represents another person. A *pro se* litigant is as much an officer of the court as a licensed attorney, and misconduct by either can be fraud on the court.

 However, in the instant case, we do not believe that the Gajewskis' conduct amounted to such an interference with the adjudication, on the merits, of the dispute over title to the land that it constituted "an unconscionable plan or scheme . . . designed to improperly influence the court in its decision". *England v. Doyle, supra*

281 F.2d at 309–310. As we discussed in relation to the Bratchers' claim for relief pursuant to Rule 60(b)(3), N.D.R.Civ.P., we do not believe that the Bratchers proved, by clear and convincing evidence, that the Gajewskis' conduct was fraudulent. While the Gajewskis' conduct in the instant case may be inconsistent with retention of the title to the land, such conduct does not sustain a finding of fraud on the court. As discussed earlier, more appropriate remedies exist to resolve any dispute over the ownership of the $5,000.

We therefore conclude that the district court's finding that the Gajewskis' conduct constituted a fraud upon such court to be clearly erroneous. Furthermore, we also conclude that such conduct did not improperly interfere with this Court's decision on the merits in *Gajewski v. Bratcher, supra,* and that therefore no fraud justifying vacation of this Court's decision in such appeal was perpetrated by the Gajewskis. The order of the district court holding that the Gajewskis perpetrated a fraud upon this Court and upon the district court is reversed.

## V.

The final issue presented for our review in this appeal concerns the district court's denial of the Rule 52(b) and Rule 60(b), N.D.R.Civ.P., motions filed by the Gajewskis; but, in light of our disposition of this case on other issues presented for review, we find it unnecessary to examine the Gajewskis' assertions in any detail. Their claim for relief under Rule 52(b), N.D.R. Civ.P., is settled by our reversal of the district court's July 1, 1975, order. The Gajewskis' claim for relief pursuant to Rule 60(b), N.D.R.Civ.P., from such order is likewise moot. We note, however, that the grounds asserted by the Gajewskis for such relief were outside of the issues presented in this action, and we conclude, from the facts before us, that the district court did not abuse its discretion in denying the Gajewskis' Rule 60(b) motion. *See Small v. Burleigh Co., supra.*

However, it would certainly be inequitable, in light of the manner in which the Gajewskis acquired the $5,000 in the instant case, to permit them to retain such money until any claim thereto is properly resolved. We therefore order that the case be remanded to the district court with directions to such court that it enter its order directing the Gajewskis to deposit with the clerk of court of McKenzie County the sum of $5,000, together with interest at the rate of four percent from August 13, 1974, within five days after the entry of the district court's order, to await lawful distribution to the persons who may be found to be entitled thereto; and we further order that the district court enter judgment on remand within ten days after the Gajewskis have complied with the provisions of this opinion. In view of the thorough consideration that this action has had in both the district court and in this Court over an extended period of time, we further order, pursuant to Rule 40(a), of the North Dakota Rules of Appellate Procedure, that the time for filing of a petition for rehearing in this appeal be shortened to seven days; and we further order, pursuant to Rule 41(a), N.D.R.App.P., that the time for issuance of the mandate of this Court shall be shortened to eight days after entry of judgment, unless a timely petition for rehearing is filed, in which case such mandate shall issue, if such petition for rehearing is denied, two days after entry of the order denying such petition for rehearing.

The order of the district court is reversed and the case is remanded with directions as heretofore set forth.

ERICKSTAD, C. J., SAND and PEDERSON, JJ., and R. R. FRIEDERICH, District Judge, concur.